UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-61195-CV-SMITH

GUY MORTIMER,

    Petitioner,

v.

RICKY DIXON,

    Respondent.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This case is currently before the court because Petitioner, Guy Mortimer, has filed a *pro se* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") [DE 1], challenging the constitutionality of his conviction and sentence entered in the Seventeenth Judicial Circuit, Broward County, Case No. 07-12912-CF-10C. For its consideration of the Petition, the Court has received the State's Response [DE 11] to this Court's Order to Show Cause, along with a supporting appendix and state court transcripts [DE 12, 13].

The Petition presents the following four claims for relief:

1. Trial counsel was ineffective for not asking the state court to instruct the jury on their option to have testimony read back. (Pet. at 3-4.)

2. Trial counsel was ineffective for failing to request an alibi jury instruction. (*Id.* at 5-6.)

3. The trial court erred in denying Petitioner's *Giglio*[1] claim based on the State's presentation of allegedly false testimony. (*Id.* at 6-7.)

4. Trial counsel was ineffective for failing to request a *Frye* hearing before the State's DNA expert testified. (*Id.* at 7-8.)

---

[1] *Giglio v. United States*, 405 U.S. 150 (1972).

(DE 1 at 3-10.) This matter is ripe for review. After reviewing the pleadings, for the reasons stated in this order, the Petition is DENIED because Petitioner is not entitled to relief on the merits.

**I.      Factual and Procedural History**

On August 2, 2007, Petitioner was charged by indictment with first degree felony murder (Count 1), three counts of robbery with a firearm (Counts 2-4), and three counts of attempted first-degree felony murder (Counts 5-7). (DE 12-1 at 5.) The Fourth District Court of Appeal summarized the history of Petitioner's criminal conduct and trial:

> On July 14, 2007, armed gunmen robbed a carwash in Pompano Beach. A car sped into the parking lot. Five masked men with guns jumped out, searched people at the car wash, and took jewelry and money. They got back into the car and rushed away. Two of the victims, Edder Joseph and Rubens Saint Remy, followed the robbers' car and called the police as they drove. Police pursued the getaway car on I–95 and unsuccessfully tried to stop it. The robbers exited at Hollywood Boulevard and raced away until they violently collided with another vehicle. An occupant of the getaway car was killed. Persons in the other vehicle were injured. [Petitioner] Guy Mortimer was in the suspect vehicle, where the police found ski masks, gloves, and property taken in the robbery. Mortimer's DNA was found inside a ski mask and one of the gloves. Mortimer was charged with felony murder and robbery.
>
> Prior to trial the State filed a motion to declare witness Edder Joseph "unavailable for trial," claiming that Mortimer and his codefendants were part of the "Doom City" gang and had tampered with Joseph to the point he was afraid to testify. The State sought to introduce Joseph's testimony from a codefendant's bond hearing held pursuant to *State v. Arthur*, 390 So.2d 717 (Fla.1980), detailing the robbery at the car wash.
>
> At a hearing on the motion, the State established that Mortimer and his codefendants were members of the Doom City gang and that the gang intended to assassinate anyone who testified at trial.
>
> The State offered testimony about shootings that occurred on July 16, 2007, two days after the robbery. On that day, a man known to Joseph told him that "Doom City will not back down" and warned him to keep his mouth shut. A short time later, at 7:21 p.m., a codefendant's brother fired numerous shots at Joseph in front of his home. At 11:33 p.m., Joseph was present at a drive-by shooting at another location. At 11:38 p.m., another drive-by shooting targeted Joseph's residence.
>
> From November 2007 to July 2008, Mortimer discussed Joseph on telephone calls from the jail, saying that he had been disrespected by Joseph, that Joseph was "the

> most important witness in his case," that "all the soldiers" were "on the ground," and that he should have been home already. On October 19, 2008, a masked man shot Joseph in the face, knee, and ankle. He sustained severe injuries; the shooting left him with no vision in one eye and limited vision in the other.
>
> The State's investigator was unable to locate Joseph at his home to serve him with a trial subpoena. A person living at the house told him that Joseph had moved out. After the investigator made two more unfruitful trips to the house, Joseph called him and refused to testify. He said, "I'm not going to come in. I'm scared to death. I don't want my children to be harmed. I don't want my wife to be harmed. I just— I'm not doing anything. My life is too valuable." Joseph refused to tell the investigator his location. He blamed the State for his injuries. The State's witness subpoena was never served.
>
> The trial court ruled that Joseph was unavailable because of Mortimer's actions and allowed the prior testimony of Joseph to be read to the jury. The testimony detailed the robbery at the car wash and the subsequent chase on I–95.

*Mortimer v. State*, 100 So. 3d 99, 101-102 (Fla. 4th DCA 2012).

On April 1, 2009, the jury found Petitioner guilty as charged on Count 1 (first-degree felony murder) and Count 3 (robbery with a firearm). (DE 12-1 at 33-34.) After being adjudicated guilty he was sentenced to life imprisonment on the felony murder charge and to a concurrent thirty-year term on the robbery with a firearm charge. (*Id.* at 42-48.)

On appeal, Petitioner argued that the trial court erred in (1) admitting Joseph's prior testimony under the doctrine of forfeiture by wrongdoing and in (2) admitting 911 calls that did not meet any hearsay exception. (*Id.* at 53-100.) The Fourth District Court of Appeal affirmed Petitioner's conviction and sentence. *See Mortimer v. State*, 100 So. 3d at 99. Petitioner sought review in the Florida Supreme Court, which denied his petition for writ of certiorari on April 7, 2014. (DE 12-1 at 158.)

On March 18, 2015, Petitioner filed an amended motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. (DE 12-2 at 1.) Subsequently, he filed two supplemental motions to enlarge issues (*id.* at 47, 54) and two supplemental motions asserting newly discovered

3

evidence (collectively the "Rule 3.850 Motion") (*id.* at 59, 70). Of relevance to the instant proceedings, Petitioner argued the following:

1. The State committed a *Giglio* violation by presenting false testimony. (*Id.* at 5-6, 13-18, 48-56.)

2. Trial counsel was ineffective for failing to advise the trial court of the option to read Joseph's deposition back to the jury. (*Id.* at 6-7, 18-22.)

3. Trial counsel was ineffective for not arguing that the State presented false testimony in the forfeiture by wrongdoing hearsay hearing.

4. Counsel was ineffective for not requesting an alibi jury instruction. (*Id.* at 10, 38-39.)

5. Newly discovered evidence based on the State's *Brady* notice relating to the Broward Sheriff's Office crime lab's DNA analysis. (*Id.* at 60-65.)

6. Counsel was ineffective for failing to seek an order for independent DNA testing of evidence. (*Id.* at 65-68.)

The State filed a response. (*Id.* at 80-119.) The trial court incorporated the State's response into its order denying the Rule 3.850 Motion. (*Id.* at 121-125.) Petitioner appealed the denial of his Rule 3.850 Motion. (*Id.* at 189-206.) The Fourth District affirmed the denial per curiam. (*Id.* at 207.) Mandate issued on February 25, 2022. (*Id.* at 210.)

## II.   Statute of Limitations and Exhaustion

The State does not contest that the Petition is timely filed. (DE 11 at 3.) The State concedes that Petitioner's first, second, and fourth claims are exhausted, but contends that Petitioner's third claim is unexhausted because he did not present it in his Rule 3.850 Motion. (*Id.* at 6.)

An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. *See* 28 U.S.C. § 2254(b), (c). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999); *Richardson v. Procunier*, 762 F.2d 429, 430 (5th Cir. 1985). In a Florida non-capital case, this means the applicant must have presented his claims in a district court of

appeal. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). The claims must be presented in state court in a procedurally correct manner. *Id.*

Moreover, the habeas applicant must have presented the state courts with the same federal constitutional claim that is being asserted in the habeas petition. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004) ("It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982))). A petitioner is required to present his claims to the state courts such that the state courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Picard*, 404 U.S. at 275-77. To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

This Court finds that Petitioner fairly presented the substance of the third claim in the instant Petition to the state courts in his Rule 3.850 Motion. The first claim in Petitioner's Rule 3.850 Motion was that the "state prosecutor committed a *Giglio* violation by presenting false

5

testimony." (DE 12-2 at 13-18.) This is the same argument Petitioner raises as the third claim in his instant Petition: "[T]he State attempted and, in fact, presented false testimony regarding the alleged alias's [sic] in an unpersuasive attempt of the Petitioner's jail phone calls to win over the admissibility of the alleged victim's deposition in trial." (Pet. at 6-7.) The trial court adopted the State's reasoning in denying this claim. (DE 12-2 at 124.) Petitioner appealed the denial to the Fourth District, which affirmed the trial court. (*Id.* at 141–44, 208.) Because Petitioner presented the state courts with the "same claim" that he brings now, Claim Three is procedurally exhausted and can be reviewed on the merits. *Picard*, 404 U.S. at 275-276.

### III. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d)(1), (2); *see Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing

6

*Williams*, 529 U.S. at 412). In adjudicating a petitioner's claim, however, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. *Early*, 537 U.S. at 8. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

More recently, the U.S. Supreme Court, in *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018), concluded there is a "look through" presumption in federal habeas corpus law, as silence implies consent. *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-06 (2016) (*per curiam*) (adopting the presumption that silence implies consent but refusing to impose an irrebuttable presumption). Where the state court's adjudication on the merits of a claim is unaccompanied by an explanation:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson*, 138 S. Ct. at 1192. In other words, if the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* However, if the relevant state-court decision on the merits is not accompanied by a reasoned opinion, because it was summarily affirmed or denied, a federal court "should 'look through' the unexplained decision to the last state-court decision that does provide a relevant rationale." *Id.*

The presumption, however, may be rebutted by showing the state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive

7

alternative grounds briefed or argued to the higher court or obvious in the record. *Id*. at 1192, 1196. "Where there are convincing grounds to believe the silent record had a different basis for its decision than the analysis followed by the previous court, the federal habeas court is free, as we have said, to find to the contrary." *Id*. at 1197.

Moreover, the Supreme Court repeatedly has admonished "[t]he petitioner carries the burden of proof" and the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Richter*, 560 U.S. at 102-03 (quotation marks omitted)); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) (acknowledging that § 2254(d) places a difficult burden of proof on the petitioner); *Renico v. Lett*, 559 U.S. 766, 777 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (§ 2254(d) "demands that state-court decisions be given the benefit of the doubt."); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. *Richter*, 560 U.S. at 96-100 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference and *citing Richter*, 560 U.S. at 100-101 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)); *see also Renico* 559 U.S. at 773 ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings . . .

8

and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court, federal courts can grant habeas relief only when a state court blundered in a manner so well understood and comprehended in existing law and was so lacking in justification that there is no possibility fair-minded jurists could disagree." *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) (citations and quotations omitted). This standard is intended to be difficult to meet. *Richter,* 560 U.S. at 102.

Petitioner has raised three claims of ineffective assistance of trial counsel. The United States Supreme Court clearly established the law governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. *Id*. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. *Id*. The judiciary's scrutiny of counsel's performance is highly deferential. *Id*. at 689. As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim.  *See Strickland*, 466 U.S. at 690. Failure to establish either prong is fatal making it unnecessary to consider the other. *See id.* at 697.

Combining AEDPA's habeas standard and *Strickland*'s two-pronged test provides the relevant inquiry in this case. To obtain habeas relief, a petitioner must show the state court "applied

9

*Strickland* to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

### IV. Discussion

Petitioner has presented four claims in his Petition. Claims One, Two, and Four were presented to the state court and analyzed under the *Strickland* standard. As discussed *infra*, the state court properly applied *Strickland* and made reasonable findings of fact in denying these claims. Claim Three was presented to the state court and analyzed under *Giglio*. The state court properly applied *Giglio* and made reasonable findings of fact in denying this claim.

#### A. Failure to Request Read Back of Testimony

In his first claim, Petitioner contends that counsel was ineffective for failing "advise the trial court of the jury's option of a read-back of Edder Joseph's deposition" after the jury asked to "look at" Joseph's deposition during deliberations. (DE 1 at 3.) This claim was presented in Petitioner's Rule 3.850 Motion. (DE 12-2 at 7.) The state court adopted the State's reasoning in denying this claim. (*Id.* at 123.) The State argued that Petitioner failed to show deficient performance or prejudice. (*Id.* at 105-107.)

The state court, in adopting the State's reasoning, reasonably applied *Strickland*. The record contradicts Petitioner's contention that reading Joseph's deposition back to the jury would have been favorable. During the State's case, it read portions of the deposition that Joseph gave during a previous bond hearing. (DE 13-1 at 484-96.) Joseph was the State's key witness, as his statement connected the masked men who robbed the carwash to the men who were arrested following the car crash off Hollywood Boulevard. (*Id.* at 488, 491-494). Joseph testified that he was working at the carwash when a small green car pulled up and five guys "rush to the corner end where we was and guns blazing." (*Id.* at 488.) The robbers wore masks. (*Id.*) One carried a

10

shotgun and the others had pistols. (*Id.*) A robber ordered Joseph to give up his jewelry and money. (*Id.*) Joseph followed the suspects after they fled the scene of the robbery until the suspects' car crashed off Hollywood Boulevard. (*Id.* at 491.) Joseph identified his stolen money, jewelry, and watch from items recovered from the crashed car. (*Id.* at 495.)

During its case, the defense read portions of Joseph's deposition into evidence. (*Id.* at 868-70.) The only material in Joseph's deposition that impeached the witness is that Joseph admitted to not knowing whether the precise number of people who initially got out of the green car was four or five. (DE 13-1 at 868-870.) The defense read this impeaching portion of Joseph's deposition during its case. (*Id.*)

During deliberations, the jury asked the trial court "is it possible to look at Edder Joseph's deposition[.]" (*Id.* at 1019.) Defense counsel proposed the court tell the jury that it "must rely on [its] collective memory regarding the contents of the testimony of Edder Joseph." (*Id.*) The trial court agreed and instructed the jury that the deposition itself was not in evidence, because only portions of it had been read, and that the jury should rely on its collective recollection of Joseph's testimony. (*Id.* at 1020).

It was reasonable strategy for counsel to not request that the court advise the jury of their ability to ask for a readback of Joseph's testimony. *See Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("Cases in which deliberate strategic decisions have been found to constitute ineffective assistance are even fewer and farther between."). Very little in Joseph's testimony was exculpatory to Petitioner, especially compared to Joseph's statements which inculpated Petitioner. Thus, counsel's performance was effective as it prevented the jury from hearing unfavorable testimony for a second time. *See, e.g., Chandler v. United States*, 218 F.3d 1305, 1321 (11th Cir. 2000) ("Misgivings about hurtful cross-examination and rebuttal witnesses have been decisive to

the Supreme Court when it determined that counsel was effective."); *Frasilus v. State*, 46 So. 3d 1028, 1031 (Fla. 5th DCA 2010) ("[A] defendant's failure to request a read-back in such a circumstance might well be strategic.").

Even if counsel performed ineffectively, the state court reasonably determined that Petitioner was not prejudiced. Had Joseph's testimony been read back to the jury, there is not a reasonable likelihood of a more favorable outcome due to the overwhelming evidence against Petitioner. *See United States v. Gonzalez*, 833 F.2d 1464, 1466 (11th Cir. 1987) (finding no prejudice where evidence of guilt was overwhelming). Hollywood Police Department Officer Larry Burgess testified that he witnessed the suspects' green car traveling "at a high rate of speed" and crash into another car. (DE 13-1 at 613.) Officer Burgess testified that Petitioner was found in the suspects' car. (DE 13-1 at 618.) Heath McWhite, a DNA specialist with the Broward County Sheriff's Office, testified that Petitioner's DNA matched DNA recovered from gloves and a mask found in the suspects' car. (*Id.* at 799-801.) Given the double deference given to the trial court's ruling, this claim is denied.

### B.     Failure to Move to Request an Alibi Jury Instruction

In his second claim, Petitioner argues that trial counsel was ineffective for failing to request an alibi jury instruction. (DE 1 at 5.) This claim was presented in Petitioner's Rule 3.850 Motion. (DE 12-2 at 10.) The state court adopted the State's reasoning in denying this claim. (*Id.* at 123-24.) The State argued that Petitioner's argument was speculative and conclusory and that he was not entitled to an alibi instruction because no alibi witnesses testified at trial. (*Id*. at 110.)

The state court, in adopting the State's reasoning, correctly applied *Strickland* in denying this claim. The record reflects that Petitioner did not establish a factual basis for an alibi instruction. The Florida Supreme Court has held that to be entitled to an alibi jury instruction, the defendant

must present evidence showing it "would have been physically impossible" for the defendant to have committed the crime. *Pasha v. State*, 225 So. 3d 688, 711 (Fla. 2017). Petitioner did not establish that it "would have been physically impossible" for him to have participated in the robbery.

The robbery occurred at approximately 7:33 p.m.[2] Petitioner claimed on direct examination that he was with his girlfriend "around the time" of the robbery. (DE 13-1 at 903.) Petitioner did not allege a specific time that he was with her. (*Id.*) Petitioner's girlfriend did not testify. Petitioner claimed that he got in the car to go to his cousin's baby shower. (*Id.* at 899.) However, he testified that he did not remember where he was picked up or what he was doing at the time. (*Id*. at 899-901.) Several critical pieces of information were missing for Petitioner to have been entitled to an alibi defense. *See Pasha*, 225 So. 3d at 711 ("the trial court did not abuse its discretion in denying Pasha's request for an alibi jury instruction because Pasha did not present evidence to show that it would have been physically impossible for him to have committed the murders").Most importantly, there was no allegation of where Petitioner was at 7:33 p.m. on July 14, 2007. Other outstanding questions are the timeframe that he was allegedly with his girlfriend, where they were, and the distance from that location to the scene of the robbery. Petitioner did not allege facts that "plac[ed] [him] in a location other than the scene of the crime at the relevant time." *Id.* (quoting Alibi, *Black's Law Dictionary* (10th ed. 2014) ("A defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time.")). Defense counsel was not ineffective for failing to request an alibi instruction, which Petitioner was not entitled to, and which would have been ineffectual. *See, e.g., Sabillo v.*

---

[2] The first 911 call to report that the robbery suspects were fleeing the carwash was placed at 7:38 p.m. (*Id.* at 518.) Joseph testified that the robbery was over in less than five minutes. (*Id.* at 886.)

*Sec'y, Dep't of Corr.*, 355 F. App'x 346, 349 (11th Cir. 2009) ("We will not fault counsel for failing to request a jury instruction to which Sabillo was not entitled.")

Even if counsel performed ineffectively, the state court reasonably determined that Petitioner did not demonstrate prejudice because of the overwhelming evidence indicating his guilt. *See Gonzalez*, 833 F.2d at 1466 ("Given the overwhelming evidence against Gonzalez, her substantial rights were not prejudiced by the brief and vague remark of the prosecutor.") Given the fact that there was no evidence supporting an alibi defense, the jury would not have believed an alibi defense. This claim is denied.

### C. Error in Denying *Giglio* Claim

In his third claim, Petitioner asserts that the state court erred in denying his *Giglio* claim that the State presented false testimony. (DE 1 at 6.) At the pretrial hearing to determine Joseph's unavailability, the State introduced Petitioner's jail phone calls as evidence that Petitioner caused others to intimidate Joseph. (DE 13-1 at 84-90.) In the recorded phone calls, Petitioner refers to a "Chuck" as "the most important witness" and states that Petitioner "should have been home already." (*Id.* at 86-88, 102.) Broward Sheriff's Office ("BSO") Detectives Thomas McInerney and Nicholas Romano testified at the unavailability hearing that Joseph went by "Chuck." (*Id.* at 25, 86.) Petitioner claims that the detectives' testimony was false because Joseph testified earlier that he only went by his birth name and that he had no aliases. (DE 1 at 6-7.)

This claim was presented in Petitioner's Rule 3.850 Motion. (DE 12-2 at 5.) The state court adopted the State's reasoning in denying this claim. (*Id.* at 124.) The State argued that Petitioner failed to show, as required by *Giglio*, that (1) the statement was false, (2) the prosecutor knew the statement was false, and (3) there was a reasonable probability the testimony affected the outcome.

14

(*Id.* at 92.) In adopting the State's reasoning, the state court reasonably applied *Giglio* in denying this claim.

To establish a *Giglio* violation, a defendant must show "(1) that the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." *Guzman v. State*, 868 So. 2d 498, 505 (Fla. 2003). Petitioner has not shown that "'there is no possibility fairminded jurists could disagree'" that a *Giglio* violation had occurred. *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) (quoting *Richter*, 562 U.S. at 102)).

First, Petitioner has not shown that no "fairminded jurist" would find that the testimony was false. *See Guzman*, 868 So. 2d at 505. Petitioner claims that Detectives McInerney and Romano presented false testimony at the unavailability hearing because Joseph testified at an earlier deposition that he did not go by any aliases. Petitioner assumes without justification, however, that Joseph testified accurately at that earlier deposition. As pointed out in the State's Response to Petitioner's Rule 3.850 Motion, Joseph gave a recorded statement to police where he referred to the fact that others called him "Chuck." (DE 12-2 at 175–76.) As such, Detectives McInerney and Romano had a reasonable basis to believe that people referred to Joseph as "Chuck." Joseph's own statement to law enforcement establishes that Detectives McInerney and Romano did not commit perjury, which is a necessary element of a *Giglio* violation. *See Guzman*, 868 So. 2d at 505.

Second, even if the State knowingly presented false testimony, the state court reasonably determined that Petitioner did not show a reasonable probability that the false testimony could have affected the judgment. *See United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995) (noting that, where a prosecutor knowingly uses perjured testimony, "the falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony *could have* affected the

15

judgment of the jury.'" (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976))). Petitioner does not connect the allegedly false testimony to the gravamen of the State's case. The allegedly false testimony concerned whether the *victim* had any nicknames, which has no bearing on whether *Petitioner* committed the crimes. As noted above, overwhelming evidence at trial established Petitioner's guilt. This claim is denied.

### D. Failure to Challenge DNA Evidence

In his fourth claim, Petitioner contends that counsel was ineffective for failing to seek a *Frye* hearing before DNA Analyst Heather Whitten testified. (DE 1 at 7.) This claim was presented in Petitioner's first supplement to his Rule 3.850 Motion based on newly discovered evidence. (DE 12-2 at 65-68.) The new evidence Petitioner refers to is the State's *Brady* notice, filed in October 2016, advising Petitioner of an allegation lodged against BSO's DNA Crime Lab for its use of the Combined Probability of Inclusion ("CPI") statistic "in complex DNA mixture cases." (*Id.* at 212.) In Claim Four, Petitioner argues that counsel was ineffective in failing to cross-examine DNA Analyst Whitten on whether her methods were "accepted by the scientific community" and whether CPI was used to test evidence for DNA in Petitioner's case. (DE 1 at 7.)

The state court adopted the State's reasoning in denying this claim. (DE 12-2 at 124.) The State argued that Petitioner did not establish deficient performance because "CPI calculation was not used in the instant case[.]" (*Id.* at 112). The state court, in adopting the State's reasoning, reasonably applied *Strickland*.

DNA Analyst Whitten testified that Petitioner was the sole match for DNA collected from a mask recovered from the suspects' car.[3] (DE 13-1 at 795-96.) CPI was not used to determine that

---

[3] Whitten also testified that Petitioner was found to be the major contributor to a DNA mixture recovered from the inside of a glove found inside the suspects' car. (*Id.* at 799.) CPI was not used in the analysis of this piece of evidence. (*Id.* at 799-800.)

16

Petitioner's DNA matched DNA recovered from the mask. (*Id.*) Petitioner does not allege that any method used to analyze DNA in his case was unreliable. Accordingly, defense counsel had no basis to seek a *Frye* hearing. *See, e.g., Hayes v. State*, 660 So. 2d 257, 264 (Fla. 1995) ("DNA test results are generally accepted as reliable in the scientific community, provided that the laboratory has followed accepted testing procedures that meet the *Frye* test to protect against false readings and contamination.")

There is not a reasonable probability that the outcome of the proceeding would have been different, had defense counsel sought a *Frye* hearing. It is probable that DNA Analyst Whitten would have been able to be qualified to give expert testimony. Moreover, there was overwhelming non-DNA evidence from which the jury could have determined Petitioner's guilt. Petitioner was arrested in the suspects' car after a high-speed chase and could not credibly explain how he ended up in the car. Joseph testified that he followed the robbers' car from the scene of the robbery to the scene of the car crash. Joseph's property was recovered from the car where Petitioner was found, as were a shotgun and handguns. Given this evidence, there is no reasonable likelihood of a different outcome, even if counsel had objected to the DNA evidence and succeeded in excluding it. *See Gonzalez*, 833 F.2d at 1466 (finding no prejudice where evidence of guilt was overwhelming). This claim is denied.

**V.     Certificate of Appealability**

As amended, effective December 1, 2009, Rules Governing § 2254 Proceedings, Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely

notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* Rules Governing § 2254 Proceedings, Rule 11(b), 28 U.S.C. foll. § 2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Petitioner cannot satisfy the *Slack* test.

Having considered the Petition, the record, and being fully advised, it is hereby

**ORDERED AND ADJUDGED** that:

1. This Petition [DE 1] is **DENIED**.
2. No certificate of appealability shall issue.
3. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 14th day of August, 2023.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:
Guy Mortimer
L49687
Desoto Annex
Inmate Mail/Parcels
13617 SE Highway 70
Arcadia, FL 34266
PRO SE

Noticing 2254 SAG Broward and North
CrimAppWPB@MyFloridaLegal.com

Jonathan P. Picard
Attorney General Office
1515 N Flagler Drive
Suite 900
West Palm Beach, FL 33401-3432
jonathan.picard@myfloridalegal.com

19